*Formatted for Electronic Distribution* *Not for Publication*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF VERMONT

Filed & Entered
On Docket
02/23/2026

In re:

    **DANIEL T. QUINN,**
              **Debtor.**

Case No. 15-10217
Chapter 13

## MEMORANDUM OF DECISION
## DENYING MOTION TO REOPEN CHAPTER 13 CASE

      This Matter comes before the Court on Debtor's Motion to Reopen this Chapter 13 case (the Motion).[1] This case, which began over ten years ago, was dismissed on May 19, 2017 for Debtor's failure to make plan payments, failure to consummate the sale of certain real estate, and failure to timely file an amended chapter 13 plan.[2] Debtor has engaged in lengthy post-dismissal motion practice in this Court, as well as concurrent litigation in the Vermont judiciary, culminating in a decision by the Vermont Supreme Court favorable to Debtor, issued on November 7, 2025.[3]

      The Motion followed. To support the Motion, Debtor filed three subsequent pleadings.[4] The Court convened a hearing on the Motion on January 16, 2026, which Debtor attended. For the reasons described below, the Court finds Debtor has not met the burden required to reopen his case.

### JURISDICTION

      The Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered by the U.S. District Court on June 22, 2012. The Court considers this matter under its "arising in" jurisdiction pursuant to 28 U.S.C. § 157(b)(1).[5]

---

[1] ECF 153. All references to the record refer to this bankruptcy case.

[2] ECF 71.

[3] *Bank of New York Mellon v. Quinn*, 2025 VT 60, ___ A.3d ___, 2025 WL 3119481 (Vt. 2025).

[4] ECF 157; ECF 159; ECF 160.

[5] *See In re McClelland*, 460 B.R. 397, 401 (Bankr. S.D.N.Y. 2011).

## BACKGROUND

Given the long history of this case, both in this Court and the state courts, the Court summarizes the events leading to the Motion currently before the Court.

**State Court Litigation**

On August 8, 2007, Debtor borrowed $365,000 from Countrywide Home Loans.[6] Debtor secured the loan with a mortgage against his real property located in Woodstock, Vermont.[7] The mortgage identified Mortgage Electronic Registration Systems, Inc. (MERS) as the mortgagee for the loan.[8] On August 31, 2009, MERS assigned the mortgage to Bank of New York, Mellon (the Bank). Shellpoint Mortgage Servicing acted on the Bank's behalf to service the loan.[9] Debtor stopped making payments on the mortgage in September 2008,[10] and the Bank brought a foreclosure action in the Vermont Superior Court in the fall of 2009.[11]

The Bank moved for summary judgment in 2010, but the Court concluded it had "not yet established its standing to assert the claim for breach of the promissory note."[12] Specifically, the Bank failed to demonstrate it was the holder of the note underlying the defaulted mortgage.[13]

The Bank moved again for summary judgment in 2012, representing its attorney was in possession of the note as an undisputed fact, and its attorney certified all documents filed in support of foreclosure were complete and accurate.[14] The Superior Court initially granted summary judgment to the Bank, then vacated that order, concluding the Bank still had not met its burden to prove its standing to foreclose.[15] On appeal, the Vermont Supreme Court found the Superior Court erred in excluding certain documents

---

[6] *Quinn*, 2025 VT 60 ¶ 2, 2025 WL 3119481 at *1 (Vt. 2025).

[7] Claim 4-1 at 9-22.

[8] *Id.* at 9.

[9] ECF 36.

[10] Claim 4-1 at 4.

[11] *Quinn*, 2025 VT 60 ¶ 3, 2025 WL 3119481 at *1.

[12] *Id.* at *2.

[13] *Id.* at *3.

[14] *Bank of New York Mellon v. Quinn*, 2022 WL 16848166 at *1 (Vt. 2022).

[15] *Quinn*, 2025 VT 60 ¶ 5, 2025 WL 3119481 at *2.

2

presented by Debtor, and remanded for further proceedings.[16]

On remand, the Bank presented the Superior Court with a copy of the note that included an undated indorsement by an executive vice president. This copy was different from the note originally presented to the Superior Court, and the Bank was unable to show proper chain of custody linking the undated note it currently possessed to its initial foreclosure action.[17] After a series of delays, the Superior Court concluded the Bank lacked standing to bring the foreclosure action, and the Vermont Supreme Court affirmed on November 7, 2025 (the Vermont Decision).[18]

**Bankruptcy Litigation**

On May 5, 2015, Debtor filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code.[19] Debtor's chapter 13 plan, confirmed on December 7, 2015, required monthly payments of $1,200 for one year, plus a lump sum payment of $276,219.00.[20] Debtor performed under the terms of his confirmed plan for only two months. He stopped making plan payments on February 16, 2016, and failed to make the lump sum payment required by his plan.[21]

On May 19, 2017, Debtor's case was dismissed for failure to make plan payments, failure to consummate the sale of real estate (which would have generated funds to make the lump sum payment), and failure to file a modified plan before a deadline set by the Court.[22]

Debtor filed a Motion to Reconsider the Dismissal Order, which argued three errors: he had ineffective assistance of counsel, this Court failed to consider certain exhibits filed by the Bank and Debtor's responses, and the Bank committed fraud in bankruptcy.[23] The Court denied that motion, finding Debtor voluntarily understood and undertook his obligations as a *pro se* Debtor, contrary to his argument that ineffective assistance of counsel caused his dismissal.[24] The Court also found Debtor had misunderstood

---

[16] *Quinn*, 2022 WL 16848166.

[17] *Quinn*, 2025 VT 60 ¶ 6, 2025 WL 3119481 at *2.

[18] *Quinn*, 2025 VT 60, 2025 WL 3119481.

[19] ECF 1.

[20] ECF 27.

[21] ECF 35.

[22] ECF 71 (the Dismissal Order).

[23] ECF 77, at 4.

[24] *Id*.

the basis of his dismissal: the exhibits he hoped for this Court to address before the Dismissal Order issued were irrelevant to the non-performance of his obligations which predicated his dismissal.[25] Finally, Debtor had several opportunities to contest the validity of the Bank's claim but failed to do so until after a binding confirmation order was issued.[26] Accordingly, Debtor's efforts to contest the Bank's claim were "untimely and insufficient to warrant reconsideration."[27]

Debtor appealed to the District Court, which affirmed this Court's denial on all three bases.[28] As relevant here, Debtor's arguments that the Bank committed fraud in the foreclosure action forcing him into bankruptcy were untimely and factually inaccurate. They were untimely because Debtor waited to present these allegations until after a binding Confirmation Order entered. They were factually inaccurate because, while Debtor contends the Bank forced him into bankruptcy through its "fraudulent" prosecution of the foreclosure proceeding, he filed a voluntary petition which bound him to the terms of the Bankruptcy Code and the Confirmation Order confirming his plan.[29] He failed to uphold those terms, so this Court correctly dismissed his case.[30]

Debtor appealed the Dismissal Order to the Second Circuit. The Court of Appeals dismissed Debtor's appeal on May 23, 2019 in a brief mandate finding the appeal "lacks an arguable basis either in law or fact."[31] The deadline for Debtor to further appeal the dismissal order expired 90 days after the Second Circuit issued this mandate.[32] At that point, the dismissal order became final, unreviewable, and unappealable.[33] This Court then issued a final decree, closing this case.[34]

On May 20, 2024, Debtor filed a motion to reopen this case, making the same fraud arguments he

---

[25] *Id*.

[26] ECF 77, at 5.

[27] *Id*.

[28] ECF 106.

[29] *Id*. at 8-9.

[30] Id.

[31] ECF 131 (*citing Neitzke v. Williams*, 490 U.S. 319, 325 (1989)); *see also* 28 U.S.C. § 1915(e).

[32] 28 U.S.C. § 2101(c); Fed. R. App. P. 41(d).

[33] *Missouri v. Jenkins*, 495 U.S. 33, 45 (1990) ("This 90-day limit is mandatory and jurisdictional. [Courts] have no authority to extend the period for filing except as Congress permits.").

[34] ECF 133. This was the third final decree. This Court issued final decrees closing the case on August 2, 2018, and again on November 1, 2018. Each time, the Court reopened the case because the final decrees were issued while Debtor's appeals were pending before the District Court and the Court of Appeals, respectively.

4

presents here.[35] This Court denied that motion, finding Debtor failed to establish cause to reopen his case.[36] Now that the state proceedings have ended and Debtor has prevailed under the Vermont Decision,[37] he has filed the Motion, seeking, yet again, to reopen his 2015 bankruptcy case.

The fraud allegations contained in the Motion have previously been considered by the District Court and the Second Circuit. Both courts rejected these arguments. As a matter of law, this Court cannot reverse a decision by the District Court or the Court of Appeals.[38] This Court is "bound to carry the mandate of the upper court[s] into execution and [can] not consider the questions which the mandate laid at rest."[39] Because those Courts considered these issues and found them without merit, this Court denies the Motion. However, given Debtor's *pro se* status, the Court provides a thorough analysis of each of Debtor's claims to explain why each are without merit, notwithstanding the latest Vermont Supreme Court decision in his favor.

### RELIEF REQUESTED

Debtor seeks to reopen his case under Fed. R. Civ. P. 60(b)(2), and argues cause exists to reopen the case under § 350 of the Bankruptcy Code. Debtor seeks three forms of relief:

1. A *de facto* finding that the Bank, its servicer Shellpoint, and the attorneys and law firms that worked on their behalf "lacked standing in bankruptcy and committed fraud, deception, malfeasance, and other unlawful actions that (criminally) forced Debtor into bankruptcy in violation of [the] Fair Debt Collection Practices Act and other federal laws;[40]

2. At least $130,000,000 in financial sanctions, including $50,000,000 against the Bank; $50,000,000 against Shellpoint; $10,000,000 against Brock & Scott PLLC; $5,000,000 each against Attorneys Folson, Volpe, Hardiman, and Katz; and $1,000,000 each from "other individual lawyers;"[41] and

3. To permanently deny the Bank and/or Shellpoint from any future bankruptcy proceedings for failure to respond to his motion to reopen, and for failure to appear at the January 16, 2026

---

[35] ECF 135.

[36] ECF 143.

[37] *Quinn*, 2025 VT 60, 2025 WL 3119481.

[38] *In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255 (1895) (When a case has been decided by an appeals court and remanded to the trial court, the appeals court's decision is final. The trial court "cannot vary it or examine it for any other purpose than execution."); *Quern v. Jordan*, 440 U.S. 332 n.18 (1979) ("a mandate is controlling as to matters within its compass."); *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (The mandate rule "requires a trial court to follow an appellate court's previous ruling on an issue in the same case."); *United States v. Uccio*, 940 F.2d 753, 757 (2d Cir. 1991) ("the trial court is barred from reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals.").

[39] *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939).

[40] ECF 153, at 1.

[41] *Id*. at 4.

5

hearing.[42]

## APPLICABLE STANDARDS

A party seeking relief from a judgment or order of the bankruptcy court may proceed under Fed. R Civ. P. 60.[43] The one-year deadline which typically governs a Rule 60 motion does not apply to a motion to reopen a bankruptcy case.[44] Rule 60(b)(2) permits the Court to relieve a party or its legal representative from a final judgment, order, or proceeding for "[n]ewly discovered evidence that, with reasonable diligence could not have been discovered in time to move for a new trial under Rule 59(b)."[45]

Debtor argues the Vermont Decision constitutes newly discovered evidence. To prevail on this ground, Debtor must establish that:

1. The newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding;

2. The movant must have been justifiably ignorant of the facts despite due diligence;

3. The evidence must be admissible and of such importance that it probably would have changed the outcome; *and*

4. The evidence must not be merely cumulative or impeaching.[46]

Once a case has been closed pursuant to § 350(a), the Court may reopen the case "to administer assets, to accord relief to the debtor, or for other cause."[47] The permissible language of 350(b) provides the Court with broad discretion to determine whether cause exists to reopen a case.[48] The moving party carries the burden to establish cause to reopen.[49] In deciding whether cause exists, the Court may consider equitable considerations and the facts surrounding the case.[50] For the reasons stated below, Debtor has failed to meet

---

[42] ECF 160, at 1.

[43] Fed. R. Bankr. P. 9024(a).

[44] Fed. R. Bankr. P. 9024(a)(1).

[45] Fed. R. Civ. P. 60(b).

[46] *United States v. Int'l Bhd. Of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (*emphasis added*).

[47] § 350(b).

[48] *In re Velez*, 604 B.R. 438, 443 (Bankr. S.D.N.Y. 2019).

[49] *In re Arana*, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011).

[50] *In re Plusfunds Grp., Inc.*, 589 F. App'x 41, 42 (2d Cir. 2015).

this burden as to any of the relief he seeks.

## DISCUSSION

The four-factor test for relief under Rule 60(b)(2) is conjunctive: Debtor must satisfy all four factors to prevail.[51] Notwithstanding the other factors, the Vermont Decision is not "of such importance that it probably would have changed the outcome."[52] That decision found the Bank lacked standing to prosecute the state court foreclosure action in 2009.[53] However, the Vermont Decision did not address any of the underlying reasons which resulted in dismissal of Debtor's 2015 bankruptcy case: (1) Debtor's failure to make plan payments, as required by the terms of his confirmed plan;[54] (2) Debtor's failure to consummate the sale of real estate and make a lump sum payment, which was required by the terms of his confirmed plan;[55] or (3) Debtor's failure to file a modified plan, as required by an order of this Court.[56] Because the Vermont Decision failed to address these underlying deficiencies, it is insufficient "evidence" to prevail under Rule 60(b)(2).

Section 350(a) permits the Court to reopen the case "to administer assets," but there are no remaining assets to be administered in Debtor's 2015 bankruptcy case. Debtor only made $9,600.00 in plan payments before his case was dismissed in 2017 for failure to comply with the terms of his confirmed plan. No assets exist to be administered.

Section 350(a) permits the Court to reopen the case "to accord relief to the debtor," but none of the "relief" requested by the Motion is available in this Court. This Court can provide no other relief by reopening the case. Even if Debtor's allegations about his creditors and their counsel are true, those allegations have no bearing on the failures which led to his 2015 bankruptcy case being dismissed, as affirmed by both the District Court and the Second Circuit Court of Appeals. The Vermont Decision provides no basis to reopen Debtor's 2015 bankruptcy case.

The final basis § 350(a) provides to reopen the case requires some "other cause." Debtor has not established any cause to reopen his case beyond his fraud arguments that were considered and rejected by this Court, the District Court, and the Court of Appeals. Accordingly, Debtor has failed to demonstrate his

---

[51] *Id.*

[52] *Id.*

[53] *Quinn*, 2025 VT 60 at ¶ 1, 2025 WL 3119481 at *1.

[54] ECF 27 at 2.

[55] *Id.*

[56] *See* Audio Recording of Hearing, Mar. 30, 2017, at 10:27-10:41.

7

2015 bankruptcy case should be reopened under Rule 60(b).

## CONCLUSION

The issues presented in these pleadings have been argued and decided time and time again.[57] The Court reminds Debtor that he has no arguable basis to bring his fraud allegations in this Court. This Court lacks jurisdiction to hear those claims and filing another motion to reconsider will not change that. Like any litigant who files a pleading in this Court, Debtor is bound by Rule 11 of the Federal Rules of Civil Procedure, made applicable by Fed. R. Bankr. P. 9011.[58] Should Debtor continue to assert these arguments, the Court may consider Rule 11 sanctions sufficient to deter repetition of this conduct, including but not limited to prohibiting Debtor from making subsequent re-filings in this case.[59]

For the reasons set forth above, Debtor's Motion to Reopen this case is DENIED. This memorandum of decision constitutes the Court's findings of fact and conclusions of law. A separate order will issue.

February 23, 2026  
Burlington, Vermont

*Heather Z. Cooper*  
Heather Z. Cooper  
United States Bankruptcy Judge

---

[57] This Motion marks the sixth time Debtor has presented these issues, and these arguments have been rejected each time they were considered. *See* ECF 74 at 2, rejected by this Court, ECF 77 at 5; ECF 80 at 1, rejected by this Court, Audio Recording of Hearing, Jul. 19, 2017, at 3:25-6:10; ECF 91 at 2, rejected by the District Court, ECF 106 at 8-9; ECF 131 (in which the Second Circuit rejected these arguments); and ECF 135 at 1, rejected by this Court, ECF 143 at 5.

[58] *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989) ("Rule 11 applies both to represented and pro se litigants.").

[59] Fed. R. Civ. P. 11(c)(4). Nothing in this decision should be considered a bar to Debtor commencing a subsequent voluntary bankruptcy case.